of that case is deferred in accordance with the order previously entered in that case. So then we'll proceed with argument in the first case on the calendar, except that we seem to have lost our video, our video feed of the attorneys. There we go. Okay, so we'll proceed to hear argument in the first case on the calendar for argument, and that's 20-16917, Richard Manriquez versus Joel Christian Ensley and Brian Lawrence. And so we'll hear first from Mr. Jellison. You may proceed. Good morning, and may it please the court. My name is Jim Jellison. I represent the Town of Superior, Arizona Police Department. I'd like to reserve five minutes. I always know how that goes, but I will try my best. This case arises out of an investigation that occurred in August of 2016, in which police officers from the Town of Superior Police Department had pulled over a John Ray Soriano and his partner Mr. Olmos in the Town of Superior when a canine alerted on the car. A search was done and various things were found, including marijuana, a glass pipe with a substance appearing to be methamphetamine residue. Well, let's go straight to the to the GRO. How can a warrant that doesn't specify the house being searched as the target of the search possibly satisfy even facially the particularity requirement that GRO describes? And certainly we were put on notice to take a look at GRO and be prepared to talk about that, so I have. The way I read GRO is this, that there was an affidavit done for a search warrant that was particular in what was being searched for weapons, explosives, and records. However, the warrant itself did not indicate what exactly was being searched for, and so when GRO got to the residence of the Ramirez family and was asked, what are you looking for? He said an explosive, a box with a with an explosive device, different than what the affidavit said, and of course, nothing about the warrant. GRO, however, does not deal with the location issue, and I think that there's a distinct difference between the two. Why do we ask police officers to be particular about what it is they're looking for? The reason is because it guides them on where they can look and how much depth they can sort of get into in looking for things. So, if you're looking for a person, then you're going to look in person-sized places. But this particularity requirement, it's in a single clause. It says in the Fourth Amendment, particularly describing the place to be searched and the persons or things to be seized. So, I'm not sure I can see how GRO can be distinguished based on the fact that here the issue is the place to be searched and not the persons or things to be seized. Well, a couple reasons, Your Honor, and as I talk, I think we're going to find that this case is as much about the constitutional issues as it is about the proper application of qualified immunity. So, when we talk about the location, the purpose of the location in the Ninth Circuit is to make sure that the law enforcement officers go to the place that they're supposed to search, that they don't go to a mistaken location. Counsel in GRO, the Supreme Court recognized, and I quote, that a particular warrant also assures the individual whose property is searched or seized of the lawful authority of executing officer. And so, isn't the Fourth Amendment right more than just what you're describing here? Doesn't it cover the right of people to ensure that law enforcement has the authority to search their property or their residence? That's absolutely correct. And our contention is that the discussion between Judge Bravo and Joel Christian Inslee satisfied that. And when I look at the appellee brief and the court's order, I'm concerned that not enough of that discussion is captured. Well, how does it satisfy that, counsel, if the Manriquez family wasn't told or the search warrant that was utilized did not outline their residence? I don't understand how that covers that right as it pertains to the facts in this case. Well, you know, one of the issues that we raised in the opening brief is can a law enforcement officer change the location of a search warrant from what's originally stated on the warrant to another location through a verbal authorization? That's been decided in the Ninth Circuit under U.S. v. CURT. And the Ninth Circuit, neither the Ninth Circuit nor the U.S. Supreme Court has ever applied growth. But in CURT, they wrote it onto the warrant, and therefore the particularity requirement was satisfied because they got the authorization from the magistrate and entered it on the warrant. But that wasn't done here, was it? But neither CURT nor SCARDA nor the military case that we cite, Smith, says that that's a requirement in order to change to an address. And again, the idea that these officers... Go back to GROW. It says in the qualifying immunity discussion, given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that say anywhere on it that this residence could be searched. It would fail the particularity requirement on its face. Why doesn't it fall within that sentence? Well, I believe, again, it goes back to the discussion between Judge Bravo and the difference between why we have the location requirement and why we have the what we're searching for requirement. And, you know, the constitutional principle says it has to be under oath, but the Ninth Circuit has held that there are certain circumstances where the warrant is still valid. It can be relied upon in good faith under Leon, even if it's not under oath. Although the Constitution says that. U.S. v. CURT, that change of address authorization was not done under oath, but the Ninth Circuit didn't have a problem with that because... Qualified immunity, there are obviously two problems. The first, whether right has been violated. And second, whether the right has been clearly established. Is your position that on the first prong, whether right has been violated, what is your position that the right has been violated, but it's not clearly established or the right has not even been violated? My position is that the good faith exception in Leon applies to the facts of this case, because Judge Bravo specifically told these officers that they could change the address location in no uncertain terms. I mean, the dialogue is clear. We're going to amend the search warrant and go for another location. And then they know the time. Can you log that for me somehow? And we'll write it up when we finish. Somebody says, yeah. Then Officer Inslee says, very good to Judge Bravo. We're going to respond to that other location and search there. And that's the location they identified as 7-11. And Judge Bravo said, all right. But doesn't that conversation suggest that the officers knew they had to change it when they say amend the warrant? I mean, it seems like amending means writing it over it and putting the details. And so perhaps they understood they had to do that, at least one reading of that conversation. And if that's the case, yeah. I mean, would the good faith exception apply if they knew they had to do that, but they just forgot to do it? And that's what I'm saying, is when you combine Leon with Massachusetts versus Shepard, where the US Supreme Court says, listen, if a neutral magistrate tells you you can do the search, you can rely on that in the absence of judicial deception, in the absence of bona fide good faith. And in this case, the court didn't find an absence of probable cause, judicial deception, or an absence of good faith. Just talked about the sheer mechanics of writing the address. But Bravo said you can go there and you can search. That address was in the affidavit. That address was associated with Soriano. And I understand Judge Collins, your point that it's not written in the affidavit. But my point is, is there authorization for a specific address, you're not going to make any mistakes about where you go, that you need to do the ministerial act of writing that on the affidavit. Now, in this case, there's not an issue about whether Mr. Manriquez has to see the affidavit or even the warrant. But let's say that he did. And let's say that Ensley then pulls out his pen and he writes, you know, 7-11 West Sonora on the affidavit. Has he now magically turned his conduct from unconstitutional to constitutional because he engaged in that ministerial activity? I don't think qualified immunity allows us to come to that conclusion in the absence of clearly established law. I think he could have done that. And it would have been up to Mr. Manriquez to I'm going to comply with this, even though it doesn't seem like it's what I would expect, or whether he would resist the search in the first place. But I say this, you know, if U.S. v. Curt tells us that you can rely on a verbal authorization to change the address to a changing it on the affidavit is a requirement to rely on that verbal authorization from a constitutional standpoint, then the absence of a case that tells you that you can't that you have to write that thing down to make it constitutional, that Ensley and Lawrence are entitled to qualified immunity. Now, this court may change the law, this court may clearly establish that that grow changes what U.S. v. Curt says or grow requires that the change be reflected in writing, but that would be established now. Does it make sense to have something in writing? I understand your point that, you know, the judge approved it. I mean, it didn't happen in this case because the person in the house didn't ask to see the warrant, but you can see why you want it written if someone that police comment says I have a warrant, and the person says I want to see the warrant and they see the warrant, it's not the house. And the police officer says, well, a judge orally told me and you're gonna have a big standoff and potentially a problem there. So I mean, it seems like there is a reason why it has to be written, even if it's written in a pen afterwards. Well, you know, and I think my response to that is that, you know, and we see this in qualified immunity over and over again. Yes, you can identify a better way of doing things and things could have been done differently, but the issue in the case is does it violate clearly established law? And so I have officers who can look at Massachusetts v. Shepard and say, hey, you know, if I've given them all this information and I've talked about 7-Eleven West Sonora as being a residence for our target that he's at a motel a half a mile away and it's drug trafficking, which includes different locations, it is usually an ongoing enterprise, that the judge tells me I can go to this new address that under Massachusetts v. Shepard, I can rely on that. And, you know, certainly us lawyers can fashion an argument, you know, with Groh and Curt and say, well, you know, maybe the law should be different, but it wasn't in 2016. So they're entitled to rely on the U.S. Supreme Court's decision in Massachusetts v. Shepard that says, hey, if the court says you can go search, you know, we're changing the address, go for it, I'm authorizing it. They get to rely on that, and that's where qualified immunity applies, because two minutes on the clock, I think you want to save time. Yeah, I better cut my time off and meet y'all back now. Okay. All right. Thank you, counsel. We'll hear now from Mr. B. Did I pronounce that correctly? It's Ben, your honor. Okay. I'm sorry about that. You may proceed. Morning. Good morning. My name is Martin Ben. I represent the FOE at Richard Manriquez. And I've looked at Groh, and I'm able to discuss this with you as well. And as I look through it, fundamentally, the warrant here was facially invalid. And that is, when we go back to the Constitution, that's the bedrock, that is the foundation for this. It's understood that if you look at the warrant, in this case, it's undisputed that it was the wrong address written on the warrant. And we have case law discussing that even if an officer can distinguish at a And that's sort of our starting point with this case. How would you respond to counsel's argument that the thing distinguishing this case, or I should say the scenario where the officer pulls out a pen and writes down the address, is it's somewhat crazy or ridiculous to think that that's what defines the constitutionality or unconstitutionality of this? How would you respond to that? I'd go back to the text of the Constitution. It requires the warrant state these things on it. Certainly, if the officer at some point should have written it on it, all of our case law that Mr. Jellison's discussed, the officer wrote the address or the change on the warrant. The one difference was Massachusetts. Suppose the officer had written it on the warrant after the search was completed, and then left it at the house. Would there be a Fourth Amendment violation then? Judge, I'm not sure. I don't know what happened here. I don't really know how to answer that one. I don't think we've ever held and certainly the federal rules don't require giving the warrant in advance. It requires that a copy be left. I'm wondering whether or not the defect here goes to the search itself or to the aspect of leaving the warrant behind. We've discussed the other issues that arise when someone asks for a warrant. You clearly want to that it has the right address that it's used. My understanding, my sense is it should be on the warrant when it's served, not some afterthought, well, we should have added this in. The problem I have with what defendants are suggesting the court do, and I remember in this case, Officer Ensley called the Justice of the Peace and read the warrant, not the warrant, the affidavit to them, did not read the warrant. The JP never saw the warrant. In fact, based on their logic, Ensley could have taken a blank piece of paper and walked to my client's house and said, okay, I've got a warrant, we're going to search. Simply saying, well, what the magistrate said, I relied on it, we did it, here it is. That's the problem. Are you saying that telephonic warrants are just invalid across the board? I'm not, but I think you have to have, what I'm saying is if Ensley had approached with a blank sheet of paper and said I relied on what the magistrate said, that's the problem. I want to raise Massachusetts v. Shepard for a second because that's a little different. In Massachusetts v. Shepard, the officer and the judge agreed to some changes and the judge didn't make them, didn't make all of them on the warrant and that's the good faith is the officer relying on what the magistrate did. That's a little different here because we have the magistrate or the JP telling him, telling Ensley in no uncertain terms, go ahead and amend the warrant and he didn't do it. I think that's also problematic and I think Gros made it clear because he prepared the invalid warrant, he doesn't get to rely on good faith. Suppose the magistrate had approved the warrant and gave it over to a secretary and said, type this up and the address is 7235 Oak Street and the secretary lazily types it up and types 72 Oak Street. Is that now facially invalid if they show up at the correct house? It would appear to be, Judge, but then we go back to the good faith reliance and what does the officer rely on and he relied on, he submitted the correct information and the change was not made by him. It was made by the magistrate and the magistrate secretary. I think that was the issue. In Gros, the Supreme Court said there was never a valid warrant because it's basically nonsensical and didn't have the location in there. Here, there's no doubt the initial warrant was valid and then the officers asked to expand it and the judge orally okayed it. In that context, isn't there a case that at least some reasonable officers would think the warrant was still valid because you had a valid warrant and you asked the court to expand it and the court approved it again under the second prong of qualified immunity. Isn't that something some officers may believe is valid? That seems no because officers are trained in my estimation to review the warrant to make sure it has the right address on it. Even with the change, they were executing a warrant on the wrong address and that's been known since at least Gros and before that you have to have a warrant that has to particularly describe the place to be searched, the things to be seen. It's fundamental basic police knowledge. That's what that is. There's no reasonable idea that a police officer can decide and that's from Gros, can decide that that doesn't apply. I think that's about all. If you don't have any other questions, I'm done. All right. Thank you, counsel. Thank you. Thank you. Rebuttal then from Mr. Jones. I don't remember to unmute myself. This warrant actually did have the right address on it. It was approved to be served at 577 Kaiser Street in Superior. In U.S. v. Curt, actually, the warrant had the wrong address on it and that's where the verbal authorization came in. I had the wrong address. The officers called the judge and they got the right address and they happened to write it on there, but there's nothing in Curt that says that was constitutionally required or that the judge ordered them to do so. Mr. Jones, let me ask you a question about the transcript that we have of the call. Aren't we to take the inferences in the light most favorable to the plaintiff here with regard to how to interpret that conversation? I think like Scott v. Harris tells us that if we have a videotape, we can rely on the videotape. I think we can rely on the plain language in the dialogue between the officer and the plaintiff. If there's any ambiguity there, though, we interpret that in favor of the plaintiff, right? If there were any. I just don't think there is when it says, when Officer Inslee says, okay, it would still serve that right now as one continuous search warrant and Bravo says, that's fine. We're going to amend the search and go for another location, stating the time. Then Inslee says, we're going to respond to that other location and search there. And he says, all right. And that location is 711 West Sonora. So they're going to go to the right place and they're going to still search for drugs just like they would before. Okay. So I see I'm out of time. I don't know if the court has any other questions for me. No. Thank you, counsel. Thank both counsel for their helpful presentations in the case of Manriquez versus Inslee and Lawrence will be submitted for decision. Thank you.
judges: COLLINS, LEE, Otake